|! KIRBY, Judge.
On December 17, 1998, the defendant, Shun Williams, was charged by bill of indictment with second degree murder, a violation of La. R.S. 14:30.1. On March 4, 1999, a jury found Williams guilty of manslaughter, a violation of La. R.S. 14:31. On May 4, 1999, the trial court sentenced him to forty years at hard labor. A motion to reconsider the sentence was denied. This appeal followed.

STATEMENT OF FACTS

At about 1:00 a.m. on October 20, 1998, the defendant, Shun Williams, decided to take his new girlfriend, Tamara “Velvet” Brown, to meet Tameka Swain, the woman with whom he was living. Ms. Brown testified that she had known the defendant for a few months prior to the shooting, but had been intimate with him for only about *1234 three days. The defendant and Ms. Brown had been together since about 6:00 p.m. the day before. They spent most of that time at the apartment Ms. Brown shared with Leatrice “Scandalous” Silas, but went out briefly for cigarettes and liquor.
When the defendant told Ms. Swain about his relationship with Ms. Brown, Ms. Swain was upset and asked him how he could do that to her. The defendant |9,then grabbed Ms. Swain, choked her and put her head through the wall. When Ms. Brown tried to stop the defendant, he began to choke her. Eventually, the defendant walked out of the bedroom and into the living room. The two women followed.
Once they were all in the living room, the defendant told Ms. Swain that he was taking Ms. Brown home, and that she should not go anywhere. The defendant took Ms. Brown home, but did not go directly back to his own apartment. Rather, he stayed with Ms. Brown, and they had intercourse. At about 4:00 or 4:30 a.m., there was a knock on the door of Ms. Brown’s apartment. Ms. Brown peeked out of the bedroom window, saw that it was Tameka Swain, and told the defendant. He told Ms. Brown to ignore her. Finally, Ms. Swain’s knocking woke Ms. Silas. She opened the door and told the defendant to get up and see what Ms. Swain wanted.
When the defendant got to the door, Ms. Swain told him that she had packed up her clothing and was leaving their apartment. He told Ms. Swain to get in his car, and they drove off. A few minutes later, he came back to Ms. Brown’s apartment and asked Ms. Brown to bring him his gun. Ms. Brown testified that he always brought his gun with him, but left it stuffed in the sofa when he left her apartment with Ms. Swain. Ms. Brown complied and brought him his gun. The defendant told her to wait there, that he would be back in about an hour, and then drove off again.
Within the hour, the defendant returned, sweaty and nervous, and told Ms. Brown, “I killed her, I shot her.” Ms. Brown testified that the defendant did not say anything about an accident and was not crying.
laThe autopsy revealed that Ms. Swain died of a single gunshot wound from a bullet that entered the victim’s heart, traveled downward and lodged in her spine. Heavy stippling around the wound indicated that the shot was fired from close range. In addition to the gunshot wound, the victim had bruises on her right forehead, and both sides of her elbows and forearms. The oval shape of the bruises around the front, back and inner side of her arms appeared like finger impressions on her skin. Tests for alcohol, drugs and sperm were all negative.
Detective Angela Davis responded to the shooting at about 5:45 a.m. She was met by the night watch officer, who advised her that a female had been shot and had already been transported to the hospital by EMS. He identified three possible witnesses. Detective Davis separated the witnesses, secured the scene and waited for the support units.
Detective Michael Riley was assigned as the lead detective on the case once it was confirmed as a homicide. He arrived on the scene at about 8:00 a.m. He identified photographs of the crime scene, including photographs indicating holes in the wall. He also identified bloodstained clothing, ammunition, hardware associated with firearms, and a single spent casing recovered from the scene. The weapon used in the shooting was not recovered.
Ms. Brown and Ms. Silas provided Detective Riley with their address about a block away from the scene of the shooting. Detective Riley found the defendant there and took him to the district station. At the station, the defendant made two tape-recorded statements, which were played for the jury.
*1235 In his first statement, the defendant admitted shooting Tameka Swain, but claimed it was an accident. He stated that he was around the corner with Velvet when Tameka came and got him. He further stated that, when he and Tameka got | ¿back to their place, he was taking his gun out and putting it on the table when it just went off. He further stated that, after the gun went off, he dropped it, tried to move Tameka, and then left when he realized she was dying. The defendant claimed he went back around the corner without first calling for assistance or telling anyone what happened. He explained that the holes in the wall were from playing with Tameka’s cousin Wanda. He stated that the gun involved was a 40 automatic that belonged to his mother. He further stated that he did not own a gun, and had only been carrying his mother’s gun for about half a day when the shooting occurred.
About an hour later, after the officers interviewed others, the defendant made a second recorded statement. He stated that he did not just run away after the shooting. Rather, he tried to help Tameka first, and then went across the street to his parents’ house to get help. He stated that his father went inside the house and felt Tameka’s neck. He further stated that he left the weapon in the house, but he did not know what happened to it after that. He denied telling Velvet or Scandalous anything when he arrived back at their place.

ERRORS PATENT

A review of the record for errors patent indicates that there were none.

ASSIGNMENT OF ERROR ONE

The defendant argues that the evidence presented at trial is insufficient to sustain the conviction of manslaughter. The standard of appellate review for sufficiency of the evidence is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the | ¡¡State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A credibility determination is within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
Manslaughter is defined at La. R.S. 14:31A(1) as a homicide which would be either first or second degree murder, “but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.” The statute further provides: “Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed....” [1] “Sudden passion” and “heat of blood” are not elements of the crime, but can be mitigating factors that the jury can infer from evidence. State v. Smith, 94-2588 (La.App. 4 Cir. 3/27/96), 672 So.2d 1034.
The defendant argues that the evidence is insufficient because the only credible evidence is his own statement. He notes that he admitted the shooting, but stated that it was accidental. The defendant avers that the testimony of Tamara Brown is not credible and should be viewed with some caution because she had been drinking on the night of the incident. *1236 However, the defendant admitted that|fihe also had been drinking, so his statement would not be any more reliable than Ms. Brown’s. The defendant suggests that Ms. Brown must have been drunk, otherwise, why would she have accompanied him to his girlfriend’s house where he was going to confess to his affair? In fact, Ms. Brown testified that she did not want to go with him, but that the defendant told her it would be all right.
The defendant ignores the various inconsistencies between his statement and the evidence presented. The defendant stated that he did not own a gun, yet his apartment was full of ammunition and hardware associated with a variety of firearms. In his first statement, he claimed that he dropped the gun after it went off and ran directly to Ms. Brown’s apartment. In his second statement, he claimed that he went across the street for assistance. The defendant stated that the holes in the wall were from his “playing” with Ms. Swain’s cousin, but the bruises noted at the autopsy support Ms. Brown’s contention that the defendant choked Ms. Swain and threw her into the wall prior to the shooting. Lastly, Ms. Brown has no stake in the case, whereas the defendant is trying to save himself from conviction.
Considering the above factors, the jury’s credibility determinations and subsequent conclusion that the shooting was not accidental were not contrary to the evidence. This assignment is without merit.

ASSIGNMENT OF ERROR TWO

The defendant argues that the trial court erred in allowing irrelevant evidence to be admitted at trial. Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the ^determination of the action more or less probable than it would be without the evidence.” La. C.E. art. 401. Evidence which is not relevant is not admissible. La. C.E. art. 402. The trial court’s determination regarding the relevancy of evidence is entitled to great weight and should not be overturned on appeal absent a clear abuse of discretion. State v. Whittaker, 463 So.2d 1270, 1272 (La.1985).
The defendant avers that the admission of exhibits of bullets, cartridges, magazines, gun locks, and other weapon paraphernalia were for the sole purpose of portraying him as a gangster. The State argued, in response to the defense trial objection, that the large amount of ammunition and weapon paraphernalia found in the defendant’s home went directly to the defendant’s credibility. The prosecutor noted that the defendant stated that he did not own a gun, and had only carried his mother’s gun for about half a day. Considering that the defendant admitted that he shot the victim, the only remaining issue in this case is whether or not the defendant was credible when he stated that the shooting was accidental. The contested evidence was relevant in the determination of this issue. Accordingly, the trial court did not abuse its discretion in admitting the evidence of ammunition and weapons paraphernalia.

ASSIGNMENT OF ERROR THREE

The defendant argues that he was prejudiced by improper remarks made by the prosecutor in closing argument. The defendant specifically avers that remarks made by the prosecutor in closing argument were unsupported by the evidence. La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact |8that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice.
This issue was discussed in State v. Frost, 97-1771 (La.12/1/98), 727 So.2d 417, rehearing denied; cert. denied, 528 U.S. 831, 120 S.Ct. 87, 145 L.Ed.2d 74 (1999), as follows: *1237 State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); State v. Morris, 404 So.2d 1186 (La.1981). As a general rule, the prosecutor may not use closing argument as a vehicle to express his personal opinions about the defendant when his opinion is expressed in a manner that the jury may understand has been formed from evidence outside of the record. State v. Procell, 365 So.2d 484, 489 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). Such an opinion is permissible if the prosecutor refers to, or it is apparent that his opinion is based on, the evidence of record. Id. See also State v. Hicks, 395 So.2d 790, 797-98 (La.1981); State v. Bretz, 394 So.2d 245, 248 (La.1981), cert. denied, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).
*1236 [A] prosecutor is afforded considerable latitude in making closing arguments.
*1237 This Court has recognized as a matter of well-settled law that the prosecutor has the right to “press upon the jury any view of the case arising out of the evidence — the Supreme Court is bound to credit jurors with common intelligence, conscientiousness, and sense of duty.” State v. Alexander, 215 La. 245, 40 So.2d 232, 234 (La.1949). Even when we have found the prosecutor to have exceeded the proper bounds of argument, this Court has often criticized the improper arguments without finding that they constituted reversible error. See, e.g. Byrne, supra; State v. Jarman, 445 So.2d 1184 (La.1984); State v. Messer, 408 So.2d 1354 (La.1982). The standard by which this Court determines whether improper closing argument constitutes reversible error is whether it is “firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict.” State v. Sanders, 93-0001 p. 16-17 (La.11/30/94), 648 So.2d 1272, 1285-86, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); Byrne, 483 So.2d at 572; Messer, 408 So.2d at 1357.
Frost, pp. 18-19, 727 So.2d at 432-433.
|flThe defendant refers to three specific remarks made by the prosecutor. The first is the • prosecutor’s remark that the victim’s heart “ended up exploding.” He notes that the testimony of the physician who performed the autopsy did not include that language. Although Dr. McGarry never testified that the victim’s heart “exploded,” he testified the victim died of a single gunshot wound to the heart from close range. The prosecutor’s language, though more graphic and dramatic than the language of Dr. McGarry, is supported by the evidence.
Secondly, the defendant complains about the prosecutor’s suggestion that the victim was pregnant. The prosecutor noted that a person who handles a gun is aware that it is “death in your hand ready to spit out and kill somebody you love, somebody who is pregnant, somebody you just put through a wall.” Defense counsel noted that the coroner’s report stated that the victim was not pregnant. He argued that the prosecutor intentionally failed to clarify the issue to inflame the jury. The prosecutor, in rebuttal argument, admitted that the State forgot to clarify the issue when the medical expert testified, but noted that the defendant thought the victim was pregnant. In his statement, the defendant said that the victim was pregnant when he met her. He estimated that she was about three months pregnant when she was shot. Considering that the issue was fully discussed by both sides in closing argument, the jury was not misled, and the prosecutor’s reference could not have prejudiced the defendant.
Lastly, the defendant complains about the prosecutor’s remarks that the defendant never tried to resuscitate the victim as they did at the hospital. As to this complaint, the prosecutor was noting that there were no photographs of the body at the crime scene because “[tjhey took her to the hospital. They were attempting to resuscitate her.” In his first statement, the defendant stated that, after the gun went |inoff, he ran away. He attempted to *1238 correct that impression in his second statement, when he testified that he tried to help the victim and then went across the street to get help from his father. The prosecutor countered the defendant’s statement that he tried to help by noting that there was no blood on the defendant’s clothing. The defendant admitted that he did not call 911. As to medical assistance, the prosecutor noted testimony that the victim was transported to the hospital by EMS technicians. The prosecutor further noted that clothing which apparently belonged to the victim was left at the scene. The prosecutor surmised that EMS technicians do not remove clothing from a dead body, but rather do it to accommodate treatment or resuscitation.
Considering that the closing argument references were all drawn from the evidence adduced at trial, they were within the scope of proper argument. This assignment is without merit.

ASSIGNMENT OF ERROR FOUR

The defendant argues that the trial court erred by imposing an unconstitutionally excessive sentence in the instant case. An appellate court reviews sentences for constitutional excessiveness under La. Const. Art. I, § 20. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment or is the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. Maximum sentences are appropriate only for the most egregious and blameworthy of offenses within a class. State v. Telsee, 388 So.2d 747 (La.1980). Courts have the power to declare a sentence excessive even if it falls within the statutory limits. State v. Sepulvado, 367 So.2d 762 (La.1979).
In The sentencing guidelines, at La. C.Cr.P. art. 894.1C, provide that the court shall state for the record “the considerations taken into account and the factual basis therefor in imposing sentence.” In the instant case, the court noted the pre-sentence investigation report, which indicated only one prior conviction, a misdemeanor theft. That report further indicated that the defendant had only three jobs since dropping out of high school. He quit each of those jobs within a short period of time because he did not like them. When questioned about how he could afford his own apartment, he admitted selling and using cocaine. The trial court mentioned the cocaine involvement noted in the pre-sentence investigation report, but relied primarily on the facts of the case to support the sentence. Those facts indicated that the defendant taunted the victim immediately prior to the offense by bringing his new girlfriend to meet her. He then became violent with the victim and, to a lesser extent, with his new girlfriend. When the victim came to the new girlfriend’s house to tell the defendant she was leaving him, he took her home and shot her in the heart. The court found that this was not an accidental shooting, but rather a “brazen act.” Thus, the trial court complied with the sentencing guidelines by delineating the reasons for the sentence in the particular circumstances of this case.
The next inquiry is whether the sentence is excessive in light of sentences imposed by other courts in similar circumstances. We do not find that this sentence was excessive in light of the jurisprudence. In State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, twit denied, 96-2070 (La.1/31/97), 687 So.2d 400, this court affirmed a thirty-three year manslaughter sentence for a sixteen-year-old first offender who drove the car but did not pull the trigger in a drive-by shooting. Moreover, maximum or near maximum sentences for | ^manslaughter convictions have been affirmed where the defendant had no prior convictions. Cf. State v. Maxie, 594 So.2d 1072 (La.App. 3d Cir. 1992), writ denied, 598 So.2d 372 (La. 1992); State v. King, 563 So.2d 449 (La. *1239 App. 1st Cir.1990), writ denied, 567 So.2d 610 (La.1990).[2]
The trial court has great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). A sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982). See also State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, in which the Louisiana Supreme Court reimposed the trial court’s forty-year manslaughter sentence on a youthful defendant, holding that the sentencing court’s finding that the offense was a “cold and deliberate act” which would have justified a verdict of second degree murder adequately supported the sentence imposed.
The above review indicates that the sentence is not excessive in light of sentences imposed by other courts in similar circumstances.
For the above reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. Manslaughter is further defined, at La. R.S. 14:31A(2), as a homicide committed without any intent when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or is resisting lawful arrest in a manner not inherently dangerous and the circumstances are such that the killing would not be murder under Article 30 or 30.1. However, this section is not relevant to the instant case because there was never any evidence that the defendant committed the homicide while engaged in the perpetration or attempted perpetration of a felony or while resisting lawful arrest.

. The maximum sentence at the time these defendants were sentenced was twenty-one years.