PAUL A. BONIN, Judge.
 

 | T A twelve-person jury unanimously found Lester Jones guilty of the offense of distribution of cocaine, a violation of La. R.S. 40:967 A(l). He was sentenced as an habitual offender to fifteen years at hard labor. Mr. Jones argues
 
 [1]
 
 on appeal that the evidence is insufficient to sustain the conviction and that the trial court erred in refusing to declare a mistrial on account of improper closing argument by the prosecutor. Because we conclude that the evidence is sufficient and that the trial court did not abuse its discretion in refusing to declare a mistrial, we affirm the conviction and sentence. We explain our reasons below.
 

 I
 

 At the outset we note that we have independently reviewed the record, as we always do, for any errors patent.
 
 See
 
 La.C.Cr.P. art. 920. A review of the record reveals one patent error. There is no indication that Mr. Jones waived the mandatory twenty-four hour delay between the denial of his motion for new trial and sentencing.
 
 See
 
 La.C.Cr.P. art. 873. The failure, however, to observe the 1 .¡twenty-four-hour delay is harmless where the defendant does not complain of his sentence on appeal.
 
 See State v. Collins,
 
 584 So.2d 356, 359 (La.App. 4 Cir.1991);
 
 see also State v. Riley,
 
 05-1311, pp. 4-5 (La.App. 4 Cir. 9/20/06), 941 So.2d 618, 621;
 
 State v. Wheeler,
 
 04-0953, pp. 8-9 (La.App. 4 Cir. 3/9/05), 899 So.2d 84, 89. Mr. Jones has not complained of his sentence on appeal and, therefore, the error is harmless.
 

 II
 

 In this Part we consider whether there is sufficient evidence of guilt beyond a reasonable doubt in order to address Mr. Jones’ specific argument that his conviction cannot stand because the cocaine purchaser, Ronald Rasul, testified that Mr. Jones was not the seller. In considering this argument, we note that Mr. Rasul admits that he had purchased cocaine just before his arrest in this matter.
 
 [2]
 
 And we also note that William Giblin, qualified as an expert in criminal analysis, testified that he analyzed the rocklike substance that Sergeant Young seized in this case, and it tested positive for cocaine. Thus, Mr. Jones’ argument is limited to whether the evidence supports identifying him as the cocaine seller.
 

 A
 

 Sergeant James Young testified that he routinely checked the area of Constance and Melpomene Streets because of prior drug activity in that area. Sgt. Young, while parked behind a vine-covered fence near the corner, soon saw a group of people standing in the street near the parking lot of an abandoned grocery 1¡¡store in the
 
 *830
 
 block. He also observed Mr. Jones standing in front of 934 Melpomene. He testified that Mr. Jones, whose hail' was in dreadlocks, was wearing a white tank top, blue jeans, and a dark blue bandana around his neck. As Sgt. Young watched, he saw a white male with a scruffy beard, whom he later identified as Mr. Rasul, ride up to Mr. Jones on a bike. The two men had a brief conversation, and then Mr. Rasul handed Mr. Jones what appeared to be currency. Mr. Jones held out his left hand, from which Mr. Rasul took a small object. Sgt. Young testified that he was too far away to see what the object was. He stated that Mr. Rasul then rode in Sgt. Young’s direction, with the object he received from Mr. Jones still clenched in his hand.
 

 Believing he had just witnessed a drug transaction, Sgt. Young pulled his car into the road and stopped Mr. Rasul. As Sgt. Young exited his car, Mr. Rasul opened his hand and dropped what appeared to be a rock of crack cocaine. Sgt. Young retrieved the object, handcuffed Mr. Rasul, and arrested him for possession of cocaine. Sgt. Young testified that as he was handcuffing Mr. Rasul, he saw Mr. Jones run up the alley next to 934 Melpomene. He called for backup, describing Mr. Jones and his clothing.
 

 Officer Jemar Goines, after hearing the call for backup, saw Mr. Jones — who fit the description — jump out of a window of a house on the 900 block of Melpomene, jump a fence, and hide under a parked vehicle on the 900 block of Terpsichore Street. Officer Goines stopped Mr. Jones and returned him to Sgt. |4Young, who identified him as the man he saw give the cocaine to Mr. Rasul in exchange for currency. Sgt Young arrested Mr. Jones for distribution of cocaine.
 

 Mr. Rasul testified for the defense that Mr. Jones was not the man who sold him the cocaine. He stated that the seller was Mr. Jones’ height, also had dreadlocks, and wore a white T-shirt. Mr. Rasul testified that about one and a half hours after he was arrested and was sitting in the police car, an officer came out of a residence with Mr. Jones in handcuffs. He stated that the officer held Jones about twenty to thirty feet from where he was sitting. Mr. Rasul testified that he was not really looking at Mr. Jones, and when Sgt. Young asked him if Mr. Jones was the seller, he replied, ‘Yeah, I guess it is.” Mr. Rasul testified that ten minutes later, when the officers put Mr. Jones into a different police car, he saw Jones’ face and realized that Jones was not the man who sold him the cocaine. He testified that he repeatedly tried to tell the officers that Mr. Jones was not the seller, but the officers did not listen to him. He insisted that he did not know Mr. Jones at that time and had never bought cocaine from him. He also denied that Mr. Jones ever threatened him. Mr. Rasul admitted that he was still on probation at the time of the trial. He denied that anyone had paid him to testify on Mr. Jones’ behalf, explaining that he wanted to testify because the charge against Mr. Jones was false. Finally, Mr. Rasul testified that although the man who sold him the cocaine looked similar to Mr. Jones, he knew the man who actually sold him the cocaine, and that man was not Mr. Jones.
 

 |sSgt. Young’s testimony, however, contradicts Mr. Rasul’s assertions. Sgt. Young denied that Mr. Rasul ever told him that Mr. Jones was not the man who sold him the cocaine, although he admitted that he had recently heard that Mr. Rasul denied that Mr. Jones was involved. He stated that when the other officers returned Mr. Jones to the scene, he took Mr. Jones over to Mr. Rasul and asked him if Mr. Jones was the man who sold him the
 
 *831
 
 cocaine. Sgt. Young explained that Mr. Rasul was initially hesitant and did not want to look at Mr. Jones, but when he finally did he said, ‘Tes.” Sgt. Young maintained that Mr. Rasul never told him that the seller was not Mr. Jones.
 

 B
 

 The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set out in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560:
 

 After
 
 Winship
 
 the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed,
 
 but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.
 
 But this inquiry does not require a court to “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” ... Instead, the relevant question is
 
 whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana,
 
 406 U.S., at 362, 92 S.Ct., at 1624-1625.
 

 (bold emphasis in original; italicized emphasis added; ellipsis indicate citations omitted).
 

 The United States Supreme Court has explained that this standard of review for sufficiency of evidence is highly deferential to the factfinder:
 

 |fiThis familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder’s role as weigher of the evidence is preserved through a legal conclusion that upon judicial review
 
 all of the evidence
 
 is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon “jury” discretion only to the extent necessary to guarantee the fundamental protection of due process of law.
 

 Jackson,
 
 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). Thus, “[a] reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the
 
 Jackson
 
 standard of review.”
 
 State v. Macon,
 
 2006-481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285-1286. “It is not the function of an appellate court to assess credibility or re-weigh the evidence.”
 
 Id.
 
 The Due Process Clause of the Fourteenth Amendment, the source of the
 
 Jackson
 
 standard, does not countenance, much less require, that we re-weigh testimony and witness credibility. And “[i]n criminal cases [a court of appeal’s] appellate jurisdiction extends only to questions of law.” La. Const, art. V, § 10(B).
 
 See also State v. Barthelemy,
 
 09-0391, p. 11 (La.App. 4 Cir. 2/24/10), 32 So.3d 999.
 

 Therefore, in discharging our review function for sufficiency of evidence, we cannot re-weigh or re-consider any conflicts in the testimony. We must confine ourselves to questions of law except to the extent, and only to the extent, that
 
 Jackson
 
 mandates otherwise.
 
 State v. Gilmore,
 
 10-0059 (La.App. 4 Cir. 10/6/10), 50 So.3d 208.
 

 17Moreover, we specifically discussed the sufficiency standard to be employed when a defendant disputes proof of identity in
 
 State v. Stewart,
 
 2004-2219, p. 6 (La.App. 4 Cir. 6/29/05), 909 So.2d 636, 639:
 

 When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its
 
 *832
 
 burden under
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 
 State v. Edwards,
 
 97-1797 (La.7/2/99), 750 So.2d 893;
 
 State v. Woodfork,
 
 99-0859 (La.App. 4 Cir. 5/17/00), 764 So.2d 132. The reviewing court must examine the reliability of an identification according to the test set out in
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977):(1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
 
 See State v. Brealy,
 
 2000-2758 (La.App. 4 Cir. 11/7/01), 800 So.2d 1116.
 

 See also State v. Mathieu,
 
 07-0204, p. 16 (La.App. 4 Cir. 2/27/08), 980 So.2d 716, 725.
 

 C
 

 While Mr. Jones is correct that Mr. Rasul denied that Mr. Jones was his dealer, he overlooks that Sgt. James Young likewise contradicted Mr. Rasul. Sgt. Young witnessed the sale and positively identified Mr. Jones as the seller. When the seller fled, Sgt. Young broadcast the seller’s description, which everyone agrees matched Mr. Jones: an African-American male with dreadlocks, wearing a white T-shirt, blue jeans, and a blue bandanna. Moments later Officer Goines, having heard the description, saw Mr. Jones jump out of a window of a residence in the same block where the sale occurred, jump over a fence, and hide under a vehicle. Upon capturing Mr. Jones, Officer Goines brought him to Sgt. Young Rwho immediately identified Mr. Jones as the seller. Moreover, Mr. Rasul admitted that he had identified Mr. Jones as his seller to Sgt. Young at the scene.
 

 Mr. Jones contends that Sgt. Young’s identification of him is not credible. He points to the fact that Sgt. Young estimated that he was one hundred feet from the hand-to-hand transaction when he observed it, and he argues that other men on the scene were dressed similarly to him and had dreadlocks. More importantly, he points to Mr. Rasul’s testimony that he was not the seller; rather, Mr. Rasul testified that the seller was someone else he knew and who was not in court during Mr. Jones’ trial. Mr. Rasul also explained that although he initially told Sgt. Young that Mr. Jones was the seller, he was not really paying attention when he did so, and he insisted that he recanted this identification once he got a good look at Mr. Jones, whom he did not know. This testimony was countered by Sgt. Young, who denied that Mr. Rasul ever told him that Mr. Jones was not the seller.
 

 The jury as factfinder was left with contradictory testimony that it resolved in the prosecution’s favor. That is the jury’s proper function. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Mr. Jones sold the cocaine to Mr. Rasul. Therefore, there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Mr. Jones is guilty of distribution of cocaine.
 

 Ill
 

 In this Part we consider Mr. Jones’ second assignment of error that the trial court erred by refusing to grant a mistrial based upon prejudicial argument by the prosecutor during closing argument. Specifically, he asserts that the prosecutor’s reference to Mr. Rasul’s fear of retaliation by him if Mr. Rasul identified him as the seller violated his right to a fair trial. We disagree.
 

 
 *833
 
 | ;,La.C.Cr.P. art. 774 provides that the scope of closing argument “shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” Closing argument “shall not appeal to prejudice,” and the prosecution’s rebuttal argument “shall be confined to answering the argument of the defendant.” While prosecutors may not refer to personal experience or turn their argument into a plebiscite on crime, prosecutors nonetheless have “wide latitude in choosing closing argument tactics.”
 
 State v. Clark,
 
 01-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183.
 
 See also State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022.
 

 Even where a prosecutor’s argument has exceeded the scope of Article 774 or is deemed to be improper, a reviewing court should credit the good sense and fairmindedness of the jurors who have heard the evidence.
 
 State v. Williams,
 
 96-1023 (La.1/21/98), 708 So.2d 703;
 
 Clark, supra; State v. Ricard,
 
 98-2278, 99-0424 (La.App. 4 Cir. 1/19/00), 751 So.2d 393. In addition, “a reviewing court will not reverse a conviction unless ‘thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.”
 
 Clark,
 
 828 So.2d at 1173.
 
 See also State v. Draughn,
 
 2005-1825 (La.1/17/07), 950 So.2d 583;
 
 Casey, supra; State v. Wiltz,
 
 2008-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554. As the Court noted in
 
 Draughn:
 
 “Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant has resulted from the prosecutor’s comments lies in the sound discretion of the trial judge.
 
 State v. Leonard,
 
 2005-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667. Moreover, a trial judge has broad discretion in controlling the scope of closing argument.
 
 State v. Prestridge,
 
 399 So.2d 564, 580 (La.1981).”
 
 Draughn,
 
 950 So.2d at 614.
 

 linMr. Jones’ assignment of error relates to argument by the prosecutor on rebuttal concerning Mr. Rasul’s supposed fear of Mr. Jones that led him to testify on Mr. Jones’ behalf. During the defense closing argument, counsel discussed Mr. Rasul’s testimony that exculpated Mr. Jones. Counsel stated that Mr. Rasul was still on probation for his cocaine charge, and his probation could be revoked if the prosecution were to charge him with perjury. Counsel then stated:
 

 So what does he gain by coming here to testify? He told you, “I don’t want this man to take something that he didn’t do.” That’s what he said. You may hear testimony later on — not testimony, argument later on that he was scared because this, that and the other. Mr. Jones contacted him, and he may have been afraid because of that. But I brought that out in redirect; just the questions like, since they both were on the same charge, he pled guilty. He really didn’t owe this man anything. If anything, that if he was scared that the man actually was the one that was doing it, he wouldn’t show up. He would definitely go to jail, if he did it. But he said this isn’t the man.
 

 During rebuttal, the prosecutor responded:
 

 Let’s talk about [Mr. Rasul’s testimony] a little bit. Mr. Rasul admits that he still lives in the same neighborhood. He stays in the same neighborhood. We can certainly understand why he would come into court today and say that’s not him. That makes sense, and the police officer told you in his testimony that he was scared. He was scared at first to identify him. He wasn’t hesitant. There was no doubt in his mind that he was scared. And we can understand that. And we can certainly under
 
 *834
 
 stand why he would come in here, in court today while he lives on the street in that neighborhood and testify for this man, his dealer. There are several reasons. We talked about those in voir dire, too ... What is he afraid of? Retaliation. Isn’t it reasonable to understand why he might come in here and change his mind today? And let’s think about it. Moments after the incident, within moments he says that’s the guy, and we talked about that in voir dire. If somebody said, well, if that’s when you’re not thinking about the consequences is your reaction [sic]. He’s already been busted. He’s admitted it. He’s got the rock. He admits he bought it. In He says, that’s the guy. Years later, he comes to court after thinking about that, and after thinking about the consequences of his actions—
 

 BY THE WITNESS (Mr. Rasul):
 

 Ma'am, I told the officer—
 

 BY THE COURT:
 

 Sir, sir, sir, Mr. Rasul — Miss Cass, escort him out, please. You can proceed.
 

 BY THE PROSECUTOR:
 

 The man lives on the street in the same area. Do you believe that he would come into court and point him out in open court and say, that’s my dealer. That doesn’t make any sense at all. And it’s unfortunate, the situation that Mr. Rasul is in. It truly is sad that he has to come into court today and testify on this man’s behalf; the man who calls him up and tells him when to be in court. And he has to live day-to-day at his demand. Be in court tomorrow. You’re going to be testifying. That’s unfortunate for Mr. Rasul. You have to look at what’s reasonable to believe. Is it reasonable to believe that he’s going to come into court today and point to his dealer? Is it reasonable to believe he did it right after, moments after? And think about it. He pled guilty as charged. He was already found with the rock. He admitted he had just bought the rock. It’s over for him. He has nothing to gain from the State. At that point when he identified the defendant, he’s already admitted to it and been found in possession of it. The only thing he has to lose now is his life. And you have to ask yourself what is reasonable to believe.
 

 At the close of argument, out of the jury’s presence, defense counsel moved for a mistrial:
 

 BY DEFENSE COUNSEL:
 

 Your Honor, based on the outburst that occurred during that closing, plus I’m asking — filing a motion or asking for a mistrial be [sic] declared in this case for the following reason: The State made — after the outburst from Mr. Ra-sul as it relates to things that the State was saying during closing, I believe that actually prejudiced | iamy client with the outburst, and highly prejudices my client. And after the outburst, the State went further and made the suggestion that he was testifying because he was scared. And the State made that statement directly after the outburst. And almost left poor Mr. Rasul — he’s homeless. He’s living in that area, and the reason why he testified is basically because he’s terrified. Now, in and of itself, if we didn’t have the outburst, I wouldn’t be standing here filing a motion for a mistrial. But in combination with the outburst and the comments from the State after that piling on, I believe that prejudiced my client as it relates to getting a fair trial. And for these reasons, I ask for a mistrial.
 

 BY THE PROSECUTOR:
 

 And, Your Honor, a brief response. If anything, the outburst helped the Defense. The man stood up and screamed,
 
 *835
 
 “No. That’s not it. I told them five minutes after.” So I don’t see how the outburst possibly helps the State at all. If anything, it allows the Defense to kind of jump back in during the rebuttal close. It’s not grounds for a mistrial. The man jumped up, I’ll argue for the defense, and was asked to leave. ’
 

 BY THE COURT:
 

 I just want to note for the record that even in your closing, [defense counsel’s name], you indicated that the State may argue that Mr. Rasul was scared, in your closing argument. And Mr. Rasul was, in fact, a defense witness. So at this time I am going to deny your motion for a mistrial, and I note your objection.
 

 Mr. Jones now argues that the prosecutor’s comments deprived him of a fair trial because they destroyed the credibility of his sole witness, who testified that Mr. Jones was not the person who sold him the cocaine. Mr. Jones asserts that the argument painted Mr. Rasul as a pitiful, weak character who only exculpated Mr. Jones because he was afraid for his life. He points out that, contrary to the prosecutor’s remarks, Mr. Jones merely advised Mr. Rasul of the trial date because the case had been reset earlier, and Mr. Rasul had not received notice of the new date. He further argues that the prosecutor’s argument falsely summarized the | iatestimony at trial concerning Mr. Rasul’s alleged fear of Mr. Jones. He correctly notes that Sgt. Young did not testify that Mr. Rasul did not look at Mr. Jones because he was afraid. Instead, Sgt. Young used the term “very hesitant” when describing Mr. Rasul’s reluctance to look at Mr. Jones, noting that “[h]e didn’t want to even look.” When the prosecutor asked why that was, defense counsel objected, and the court sustained the objection because the answer would be speculative. Mr. Jones further asserts that the prosecutor falsely stated that Mr. Rasul testified because he was in fear of his life. He points out that Mr. Rasul denied that anyone had threatened him in order to get him to testify on Mr. Jones’ behalf.
 

 Mr. Jones asserts that the prosecutor’s argument exceeded the facts presented at trial. This court has refused, however, to reverse defendants’ conviction where the prosecutor’s argument included facts that were not adduced during testimony.
 
 See State v. Anthony,
 
 08-1031 (La.App. 4 Cir. 11/19/08), 862 So.2d 124 (noting that the prosecution’s argument was clearly speculation rather than a reference to facts known to the prosecutor but not brought out at trial). This court was not thoroughly convinced, given the common sense and fairmindedness of the jury, that the prosecutor’s argument contributed to the verdict or influenced the jury.
 
 See also State v. Plaisance,
 
 00-1858 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172 (the prosecutor referred to blood on a seatbelt, a fact not adduced at trial). This court rejected the defendant’s claim that this argument merited reversal of his conviction.
 

 Defense counsel at trial admitted that the prosecutor’s statements, by themselves, would not have been a basis for a mistrial. He argued nonetheless that these statements, when added to Mr. Ra-sul’s outburst, unduly prejudiced Mr. 114Jones. It is difficult to see, however, how Mr. Rasul’s outburst would have prejudiced Mr. Jones; if anything, it reinforced defense counsel’s earlier argument that the prosecution would try to impeach Mr. Rasul’s testimony by arguing that it was the product of fear. In any event, most of the prosecutor’s argument detailed above was an arguable interpretation of the testimony adduced at trial. Mr. Ra-sul’s testimony implied that he bought drugs in the area before the date of his arrest; he admitted that he had been to the house before, and he stated that when he first rode up to the house, he “just went
 
 *836
 
 there to see if somebody was there. They’re not always there.” He admitted that although he was homeless, he stayed in the area of his arrest. He admitted that he had frequented the area for thirty years. He also admitted that he had a prior conviction for distribution of an unnamed drug, a conviction that occurred in the 1980s. Thus, there was a basis for the prosecutor’s statements that Mr. Rasul would not want to correctly identify his dealer, especially if he was on probation and was staying in the neighborhood where the drug sale occurred.
 

 The most powerful statement that the prosecutor made was that the only thing that Mr. Rasul had to lose at this point was his life. Although this is considerable exaggeration, the jury was fully aware of Mr. Rasul’s denial that he was testifying on Mr. Jones’ behalf for any other reason except that he was not the person who sold the cocaine to Mr. Rasul. In addition, just prior to the prosecutor making this statement, Mr. Rasul re-emphasized this testimony by jumping up during the prosecution’s closing argument to dispute the prosecutor’s comments that he testified out of fear. Giving credit to. the good sense and fairmindedness of the jurors who had heard the evidence adduced at trial, Mr. Jones has failed to meet his burden of “thoroughly showing” that the prosecutor’s statements influenced the | K¡jury and contributed to the verdict. Therefore, he has failed to show that the trial court abused its discretion in denying his motion for mistrial.
 

 DECREE
 

 Accordingly, we affirm the conviction and sentence of Lester Jones.
 

 AFFIRMED.
 

 [1]
 

 . We granted Mr. Jones additional time within which to supplement
 
 pro se
 
 his counsel’s brief, but he did not file supplemental brief.
 

 [2]
 

 . Mr. Rasul entered a plea of guilty to possession of cocaine as a result of his arrest in this matter.