SANDRA CABRINA JENKINS, Judge.
| , After a trial by jury, Michael Simonson was convicted of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2, and sentenced to ten years at hard labor. The defendant now appeals, arguing that the evidence is insufficient to sustain the conviction and that the trial court erred in refusing to declare a mistrial on account of improper closing argument by the prosecutor. For the following reasons, we affirm the defendant’s conviction.
FACTUAL AND PROCEDURAL BACKGROUND
On April 9, 2011, ADT security received notice of alarms going off around 8:05 p.m. at the residence located at 7176 Lamb Street in New Orleans, Louisiana. ADT notified the police and Detective Derrick Williams responded to the call. When Det. Williams arrived at the residence, he observed a pickup truck in the driveway with the driver’s side door open and the tailgate down; he also noted that the truck was running. Det. Williams called for backup as his experience led him'to believe that a burglary was in progress, and then positioned himself to observe anyone coming out of the house; As he got closer to the house and looked into the backyard, he observed an individual, later identified as Troy Simonson, coming from the rear of the house pushing a refrigerator on a hand truck. When the |2individual placed the hand truck down and attempted to maneuver the refrigerator into the truck bed, Det. Williams was able to grab and subdue the individual.' While apprehending Troy, Det. Williams observed a second individual, later identified as Troy’s brother, Michael Simonson, the defendant, behind him. The defendant began to run, but stopped upon Det. Williams’ command. Det. Williams was ultimately able to detain the two individuals and place them in handcuffs. A pat down search of both men was then performed and a screwdriver was found in Troy’s pocket; because screwdrivers are commonly used as a burglar tool to pry open doors and locks, it was- confiscated.
Back up officers arrived after the men were secured and Det. Williams called the crime lab to survey the house for additional damage. The officers observed that the back sliding glass doors had been removed from their hinges and the house appeared to be 'in the process of being renovated as it was empty. Det. Williams noted that the burglar and fire alarms were pulled off the walls and ceiling, which damaged the sheetrock, and a fire alarm was found in the refrigerator. Pry marks were exhibited on all doors, the locks on the rear and front gate were damaged and defeated, and access through the rear gate was achieved.
Part of a locking mechanism was found on the front seat of the truck, and a pair of pliers was found on the back seat. The crime lab technicians attempted to obtain *40 fingerprints from the truck, but were unable to do so because the surfaces were not suitable for prints. Det. Williams spoke with a neighbor and took a statement from him. Det. Williams also contacted the owner of the residence, David Davis, who was in Jackson, Mississippi at the time of the incident.
^Consequently, the defendant and his brother were charged with simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2.[1] The defendant later entered a not guilty plea and elected to be tried by a jury.[2]
' Forest Buxton, Davis’ neighbor of more than ten years, testified at trial that he heard a “loud boom” while sitting in his den on the evening in question. Buxton testified that he went in his backyard to see if there was “any kind of commotion on that side,” but could not see anything as it was dark and an eight-foot wooden fence separated the properties. Buxton stated that he then went to his front door and observed a light colored pickup truck parked in Davis’ driveway. Buxton received a call from Davis shortly thereafter, and based on that conversation, by the time Buxton went back outside to see what was going on, the police had arrived. Bux-ton testified that he then went to Davis’ house to speak with the police and observed a refrigerator standing in the driveway. At trial, Buxton stated that he had never seen the defendant before.
Davis testified that he has resided at 7176 Lamb Street for over fourteen years and owned the property at the time of this incident. Besides some appliances, the house was empty for the renovation process, but had electricity and running water, all doors had locks, and an alarm system was installed. On the night in question, Davis stated that he and his wife-had been at the house cleaning until 5:00 p.m. Davis stated that they locked and secured the residence when they left, and no one had permission to be in his house that night. Davis testified that he had never met the defendant and did not give him permission to ever be in his house. pDavis also stated that while ADT notified him of the burglary that night, he did not return to the house until the following day. Davis testified that did not leave his house in the condition in which he later found it.
Troy testified on the defendant’s behalf at trial. Troy acknowledged that he pled guilty to the present offense and was sentenced to fifteen years at hard labor, but maintained his and his brother’s innocence. According to Troy, they went to the residence with a man by the name of Larry to help repair an icemaker, and Larry was the only one who entered the house to remove the refrigerator. Troy further testified that he did not know Larry’s last name, Larry disappeared when the police arrived, and he did not know how the locking mechanism got in the truck.
On cross-examination, Troy admitted to numerous convictions[3] and was presented *41 with recordings of telephone calls he made while in Orleans Parish Prison for the present offense. In one of the phone calls, Troy stated that the police did not catch him inside the house, but instead caught him outside. The recording of the phone call was played for the jury and the context of the call revealed that Troy was speaking about himself and his brother to another man.[4]
After considering all of the evidence and testimony presented throughout trial, the twelve-member jury found the defendant guilty as charged. The trial court sentenced the defendant to serve ten years at hard labor, with the first year to be |fiwithout benefit of probation, parole, or suspension of sentence, with credit for time served.[5] This appeal followed.
LAW AND ANALYSIS
In his appeal, the defendant assigns two errors: (1) the evidence presented at trial was insufficient to convict him of simple burglary of an inhabited dwelling; and (2) the trial court erred in refusing to declare a mistrial based on the prosecutor’s improper closing argument.

Sufficiency of Evidence

In this assigned error, the defendant argues that the evidence presented was insufficient to convict him of simple burglary of 7176 Lamb Street because it failed to prove that he entered the house. Defendant contends that he was unaware that a burglary was occurring, and instead thought that he and his brother were merely helping a friend repair an icemaker.
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Falkins, 12-1654, p. 8 (La.App. 4 Cir. 7/23/14), 146 So.3d 838, 845 (citing State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55). It is well established that in reviewing such a claim, appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Ennis, 11-0976, pp. 4-5 (La.App. 4 Cir. 7/5/12), 97 So.3d 575, 579 (quoting State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18).
In applying this standard, the appellate court is not to determine whether it “believes the witnesses or whether the conviction is contrary to the weight of the evidence,” but rather it is to consider the record as a whole, and if rational triers of fact could disagree as to the interpretation of the evidence, the conviction should not be disturbed. State v. Peters, 12-1641, p. 16 (La.App. 4 Cir. 8/21/13), 123 So.3d 307, 316 (quoting State v. Taylor, 12-0345, pp. 18-19 (La.App. 4 Cir. 6/26/13), 118 So.3d 65, 77).
To establish the crime of simple burglary of ah inhabited dwelling, the State must prove beyond a reasonable doubt that the offender, without authorization, entered the victim’s home with the intent to commit a felony or theft therein. La. R.S. 14:62.2. Thus, the three essential elements are: (1) unauthorized entry, (2) *42 of an inhabited dwelling, (3) with the intent to commit a felony or theft.
Specific intent is an essential element of this crime. State v. Agee, 08-0203, p. 6 (La.App. 4 Cir. 7/23/08), 990 So.2d 95, 98 (citing State v. Chairs, 99-2908, p. 9 (La.App. 4 Cir. 2/7/01), 780 So.2d 1088, 1095). Specific intent is that “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Therefore, specific intent need not be proven as fact since it can be inferred from the defendant’s acts and circumstances. State v. Buhcannon, 11-1727, p. 11 (La.App. 4 Cir. 3/13/13), 112 So.3d 312, 319 (quoting State v. Pittman, 11-0741, pp. 3-4 (La.App. 4 Cir. 2/29/12), 85 So.3d 782, 785).
When circumstantial evidence forms the basis of the conviction, the applicable standard is: “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. In Agee, the defendant argued that the State’s 17circumstantial evidence was insufficient to prove his entry into the residence; however, this Court' affirmed his conviction, noting that “[t]his court and others have affirmed convictions for burglary where the entry into the structure is proven solely through circumstantial evidence.” Agee, 08-0203, p. 7, 990 So.2d at 99 (citations omitted).
Here, Det. Williams testified that: he observed two individuals, later identified as the defendant and his brother, exiting from the rear of a house, with a refrigerator. on a hand truck; after the defendant saw him, he started to flee but complied with his command to stop; a screwdriver was found during a search of the defendant’s brother; the sliding glass doors were removed from their hinges; the front door lock had been defeated; all- doors exhibited pry marks; the security and fire alarms had been removed from the wall; one fire alarm was found in the refrigerator; and the rear defeated gate locking mechanism was found on the front seat of the truck. Moreover, Davis testified that: he did not know the defendant or his brother; he did not give either of them permission to enter his residence; and he later found his residence in a different condition from which he left it.
Despite the defendant’s contention, the testimony and evidence indicate that the defendant intended to commit a theft, and the pry marks, defeated locks, and removal of the doors prove an unauthorized entry. Thus, reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the defendant burglarized the residence. This assignment of error is without merit.

Mistrial

In his second and final assignment, defendant contends that the trial court erred in refusing to declare a mistrial, by reason of the comments made by the prosecutor during rebuttal closing argument.
La.C.Cr. P. art. 774 provides that the scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” The Article further states that closing argument “shall not appeal to prejudice,” and the State’s rebuttal argument “shall be confined to answering the argument of the defendant.” Id. While jurisprudence has found that prosecutors may not refer to personal experience or turn their argument into a commentary on crime, prosecutors have “wide latitude in choosing closing argument tactics.” State v. Clark, 01- *43 2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183 (citing State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716; State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036).
This Court noted in State v. Jones, 10-0018 (La.App. 4 Cir. 11/10/10), 51 So.3d 827:
Even where a prosecutor’s argument has exceeded the scope of art. 774 or is deemed to be improper, a reviewing court should credit the good sense and fair-mindedness of the jurors who have heard the evidence. In addition, “a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict.” As the Court noted in Draughn: “Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant, has resulted from the prosecutor’s comments lies in the sound discretion of the trial judge. Moreover, a trial judge has broad discretion in controlling the scope of closing argument.”
Id., p. 9, 51 So.3d at 833 (internal citations omitted).
 It is well established that argument on the credibility of a witness is proper where the facts bearing on the witness’ credibility appear in the record. State v. Everett, 11-0714, p. 35 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 630 (citing La. C.Cr.P. art. 774; State v. Sayles, 395 So.2d 695, 697 (La.1981)). However, a prosecutor may not use closing argument as a vehicle to express his personal opinions about the defendant when his opinion is expressed in a manner that the jury may understand has been formed from outside evidence. State v. Procell, 365 So.2d 484, 489 (La.1978). Thus, this Court has recognized that a prosecutor has the right to “press upon the jury any view of the case arising out of the evidence.” State v. Williams, 99-1868, p. 8 (La.App. 4 Cir. 1/31/01), 778 So.2d 1232, 1237 (quoting State v. Alexander, 215 La. 245, 40 So.2d 232, 234 (1949)).
In the case at bar, defense counsel objected to three comments made by the prosecutor during rebuttal argument, which were all overruled. After the jury exited the courtroom for deliberation, defense counsel subsequently sought a mistrial based upon these comments arguing that they included facts not in evidence. The trial court denied the mistrial and noted that the jury had been advised that closing argument was not to be considered as evidence.
The first comment the defendant complains of is the prosecutor’s remark that Det. Williams caught the defendant and his brother red handed coming out of the house.. This comment was simply the prosecutor’s interpretation of the evidence presented at trial wherein Det. Williams testified that he observed the defendant and his brother coming from the rear with the refrigerator, the back sliding glass doors were removed, and the fire alarm that was ripped off the wall was found in the refrigerator. Thus, this evidence is sufficient to allow the prosecutor to argue that the defendant had been inside the residence.
 Secondly, the defendant complains about the prosecutor’s suggestion that the detectives dusted for fingerprints in the house. This statement was made in response to defense counsel’s argument about the lack of fingerprints in the house. Det. Williams testified that the crime lab technicians were called to the scene to, among other things, take photographs and search for fingerprints. When asked where the crime lab attempted to obtain fingerprints, Det. Williams stated that he only observed the vehicle being dusted for fin *44 gerprints. While the prosecutor’s comment that the house was dusted for fingerprints may be arguably incorrect, the prosecutor did not create the impression that the defendant’s fingerprints were found in the house. Thus, this statement did not cause any prejudicial effect to the defendant.
Lastly, the defendant complains about the prosecutor’s statement concerning Troy’s recorded jail telephone call. Specifically, defendant objected to the prosecutor’s remark that Troy said, “they didn’t catch us in the house. They caught us when we were at the gate with the fridge on the hand truck. That’s right. They didn’t catch him in the house; cause they were already outside. Later he says: somebody must have called a neighbor or something. He knew they were ... doing something illegal.” A recording of this call was played for the jury in which Troy indicated that the police did not catch him and the defendant in the house, they were caught by the truck with the refrigerator, and a neighbor must have called the police.[6] Thus, we find the prosecutor’s comment to be an accurate summary of the phone conversation. Furthermore, the prosecutor’s statement that Troy knew they luwere doing something illegal was directed at Troy’s credibility, which is an appropriate issue to be discussed in closing argument.
The defendant has failed to show that the prosecutor’s remarks influenced the jury and contributed to the verdict. Accordingly, we find that the trial court did not abuse its discretion in refusing to declare a mistrial due to the prosecutor’s improper closing argument. This assigned error is without merit.
DECREE
For the reasons set forth herein, we affirm the conviction of the defendant, Michael Simonson.
AFFIRMED.

.Troy entered a guilty plea to this charge, and was sentenced to twelve years at hard labor. The State then filed a multiple bill of information, and Troy admitted to the allegations. Accordingly, the trial court adjudicated troy a multiple offender, vacated the original sentence, and resentenced him to serve fifteen years at hard labor, with t credit for time served.

. The defendant was initially found incompetent to stand trial, but was subsequently found competent on two separate occasions.

. In 2007, Troy pled guilty to simple burglary. In 2008, Troy pled guilty to another count of simple burglary, and was convicted of possession of cocaine. From 1987 to 1993, Troy had several convictions in Virginia, including two counts of possession of a stolen automo *41 bile, one count of forgery, and one count of breaking and entering.

. In the phone call, Troy specifically references his brother’s full name.

. The State filed a multiple bill of information the day of the defendant’s sentencing. However, the multiple bill was revoked at a later date.

. Troy’s language, as articulated in the recording, was that "they caught us coming out of the gate, from the back yard, with the refrigerator on the hand truck ... He was going to the truck, we was backed up to the gate and we was coming around that side. They didn’t catch us in the house, but they caught us with the refrigerator in the yard.” The recording further reveals that when the friend on the other line stated "somebody must have called,” obviously commenting on how they were caught, Troy responded, "Probably a neighbor or somebody ... I don’t know.”