MAX N. TOBIAS, JR., Judge.
 

 | TOn 22 May 2008, the state charged the defendant, Allen Berry (“Berry”), by bill of information with one count of violating La. R.S. 14:95 E, possession of a firearm while in possession of a controlled dangerous substance, and one count of violating La. R.S. 40:966 C(l), possession of heroin.
 
 [1]
 
 On 30 June 2008, Berry appeared before the trial court for arraignment and entered a plea of not guilty to the charges. On 14 October 2008, the trial court heard the
 
 *820
 
 defendant’s motion to suppress evidence, motion to suppress statement, and held a preliminary hearing. The trial court denied Berry’s motions and found sufficient probable cause to substantiate the charges brought against him.
 

 On 3 June 2009, Berry went to trial. Prior to trial, he elected to have his case tried before a jury. At trial, the state introduced testimony from two witnesses and introduced eleven exhibits. The record indicates that Berry testified on his own behalf. The jury found him guilty of attempted possession of heroin and possession of a firearm while in possession of a controlled dangerous substance.
 

 |20n 10 March 2009, Berry filed a motion in arrest of judgment arguing that his conviction for possession of a firearm while in possession of a controlled dangerous substance should be arrested on double jeopardy grounds because he was convicted of the mere attempted possession of heroin. The state’s written response to the defendant’s motion cited to this court’s opinion in
 
 State v. Warner,
 
 94-2649 (La.App. 4 Cir. 8/16/95), 653 So.2d 57, conceded the double jeopardy issue, but asked the trial court to arrest the defendant’s conviction for attempted possession of heroin. On 23 March 2009, the trial court vacated Berry’s conviction for attempted possession of heroin and sentenced him to seven years hard labor, without benefits, on the remaining count. Berry’s motion for out of time appeal was granted.
 

 FACTS
 

 The state elicited testimony from Officer Nicholas A. Williams, who stated that on 15 April 2008, he was assigned to the New Orleans Police Department’s (“NOPD”) First District Task Force, partnered with Officer Aaron Wiltz, and had occasion to be involved in an investigation that resulted in Berry’s arrest. Specifically, Officer Williams testified that the First District Task Force had received some complaints of illegal narcotics sales and use near an apartment complex located in the 400 block of North Prieur Street. After conducting some patrols, Officer Williams, his partner, and several other task force officers traveled to the 400 block of North Prieur Street at approximately 9:00 p.m. The officers parked their cars on St. Louis Street, near its intersection with North Prieur, and conducted a foot patrol of the apartment complex’s outer perimeter. The officer stated that while he was on foot patrol, walking on North Prieur headed in an uptown direction, he observed a man, who was known to the officers, enter the |aapartment complex.
 
 [2]
 
 Officer Williams explained that the officers knew the man because they had witnessed him while on patrol in the same vicinity earlier in the day. As they entered the complex’s gate, the man turned his head, looked over his shoulder, and noticed them. Officer Williams testified that the man displayed a nervous facial expression. Because of this expression, the officers decided to approach him and conduct a field interview. Simultaneously, the man approached Unit Four and knocked on the door. The door opened and a man, later identified as Bur-ras Magee, appeared and began to speak to the first man. Officer Williams testified that he observed Mr. Magee holding a plastic bag containing syringes, bottle caps, and aluminum foil. When Mr. Ma-gee noticed the officers, he immediately turned around and attempted to shut the apartment’s door. Officer Williams stopped him from closing the door, pushed the door back open, and entered the apartment. Immediately, Officer Williams handcuffed Mr. Magee and attempted to ascertain the contents of the plastic bag.
 
 *821
 
 Officer Williams also testified that while he was detaining Mr. Magee, his partner upon entering the apartment went in to another room. Officer Williams did not see what his partner was doing in the other room. Rather, Officer Williams did not see his partner again until he emerged from the other room with Berry in tow.
 

 On cross-examination, Officer Williams admitted that he never saw or heard Berry in the house until after his arrest of Mr. Magee. Similarly, Officer Williams admitted that he never saw the defendant in possession of illegal narcotics or a gun. Further, Officer Williams noted that he did not personally conduct a search of the apartment. Lastly, while on direct examination, Officer Williams identified Berry in court as the man arrested by his partner on the date of the incident. Similarly, |4Officer Williams also identified the plastic bag filled with syringes and paraphernalia that he confiscated from Mr. Magee at the time of his arrest.
 

 The state next called Officer Wiltz. Officer Wiltz testified that on 15 April 2008 he was assigned to the N.O.PJD.’s First District Task Force, partnered with Officer Williams, and involved in the arrest of the defendant. The officer testified that the arrest of the defendant arose out of several complaints made by neighbors concerning narcotics activities occurring in and around the apartment complex. Officer Wiltz noted that prior to approaching the apartment complex he and several other officers parked their police units at the corner on St. Louis Street and choosing to approach the complex on foot.
 

 As Officer Wiltz turned the corner from St. Louis on to North Prieur, he observed Lagusta Williams also walking into the fenced apartment complex. Officer Wiltz noted that he and his partner had observed Mr. Williams earlier that day, wearing the same clothes. Officer Wiltz, as well as the other officers, also entered the fenced-in apartment complex. As he entered the complex, Officer Wiltz observed Mr. Williams turn around, notice the officers, and exhibit a nervous demean- or. Officer Wiltz testified that he decided to conduct a field interview of Mr. Williams, but the officers were unable to speak with Mr. Williams because he approached Unit Four and knocked on the door before the interview could take place. When Officer Wiltz was approximately ten feet away from Mr. Williams, the door to Unit Four opened and Officer Wiltz observed Mr. Magee come to the door. He testified that he saw Mr. Magee lean out of the door while holding a clear plastic bag, which appeared to contain syringes and aluminum foil. He identified the bag at trial and noted that it contained syringes, aluminum foil, and two bottle caps.
 

 |fiMr. Magee observed the officers and attempted to close the door to the apartment. Officer Wiltz testified that Mr. Ma-gee could not get the door closed, and his partner was able to push the door open and enter the apartment. Officer Williams moved to detain Mr. Magee while Officer Wiltz moved in the opposite direction and observed the defendant, standing in the middle of a bedroom.
 
 [3]
 
 Officer Wiltz testified that the defendant appeared startled and immediately, with his left hand, threw a plastic bag that contained numerous pieces of foil onto the bed. Officer Wiltz identified the bag and testified that the bag contained fifty-six packets of foil that later tested positive for heroin. After tossing the bag onto the bed, Berry pulled
 
 *822
 
 a handgun from a holster affixed to his right side and tossed it onto the bed. He then jumped through a screened, yet open, window only to be stopped and detained by another officer on the outside of the house. Officer Wiltz identified the weapon as a .45-caliber handgun. A subsequent check of the handgun’s serial number revealed that it was reported as stolen in Jefferson Parish.
 

 Officer Wiltz identified the defendant’s holster, and approximately $1,076 in cash seized from Berry’s person at the time of his arrest. Additionally, Officer Wiltz noted that when he first entered the bedroom he noticed several items on the bed that are used in the distribution of heroin. Specifically, Officer Wiltz identified the following items on the bed: (1) a digital scale; (2) a razor; (3) aluminum foil; (4) anacitol, a compound used to dilute heroin; and (5) the box that originally contained the digital scale.
 

 | (¡The state introduced the crime lab report, and the parties stipulated that, if called, the state’s criminalist would have testified that the suspected contraband seized from Berry tested positive for heroin. The state then rested its case.
 

 Berry testified that he recalled being arrested on 15 April 2008. He testified that his brother was murdered on 8 April 2008, and he was in the process of asking friends and relatives for monetary contributions for the funeral fund. On the night of his arrest, he asserted that he went to the apartment complex to visit his Uncle Robert, who was staying with an acquaintance, and to ask him for a monetary contribution.
 

 Berry testified that he parked his car in the complex’s parking lot, approached Unit Four, and knocked on the door. He stated that an elderly lady, later identified by Berry as Miss Beverly, opened the door. The defendant stated that Uncle Robert identified him as his nephew who was at the door, and Miss Beverly invited him inside and offered him food and a drink, both of which he declined. Berry also testified that upon entering the apartment he noticed another man inside, later identified as Burnis Magee, doing some maintenance work the apartment.
 

 The defendant noted that his uncle asked him to sit and talk. Berry testified that approximately five to seven minutes after sitting down, he heard a knock on the door. Miss Beverly opened the door only to have a gun shoved in her face. He stated that several police officers then ran into the dwelling, with guns drawn, shouting at the occupants to put their hands up. One of the officers ordered the occupants to get down on their knees while another ran towards the back bedroom. The defendant testified that while on his knees, the police ran the occupants’ 17names through a police computer. While still on his knees, he observed the police return from the master bedroom with narcotics.
 

 Berry specifically denied knowing about the presence of the narcotics in the dwelling or ever having gone into the master bedroom. Additionally, he denied having a weapon and a holster on the night of the arrest. He also denied having any significant amount of cash on him at the time of his arrest, jumping through a window, or buying a stolen handgun. Berry explained that his right arm was injured as a result of a prior encounter with a police dog, and that he is no longer able to use his right hand.
 
 [4]
 
 Further, he told the jury, on direct examination, that he drives a turquoise S-Type Jaguar, even though he was disabled and unemployed. When asked about this
 
 *823
 
 fact on cross-examination, Berry explained that the Jaguar belonged to his wife, who is employed as a nurse, and is registered in her name. Berry introduced no exhibits. The jury found the defendant guilty of violating La. R.S. 14:95 E and attempted possession of heroin.
 

 ERRORS PATENT
 

 A review of the record reveals no errors patent.
 

 ASSIGNMENT OF ERROR
 

 In his sole assignment of error, Berry asserts that his conviction and sentence for possession of a firearm while in possession of heroin must be reversed because: (1) the jury also found him guilty of attempted possession of heroin and (2) the wording of La. R.S. 14:95 E does not allow for a conviction thereunder to be based upon a finding of attempted possession of heroin. Contrariwise, the state argues |sthat Berry is seeking to confuse the issues by arguing that the jury’s verdict was unauthorized. Further, the state argues that the evidence adduced at trial was sufficient to sustain the defendant’s conviction for violating La. R.S. 14:95 E. In support, the state cites to
 
 State v. Harris,
 
 97-2903 (La.App. 4 Cir. 9/1/99), 742 So.2d 997, which held,
 
 inter alia,
 
 that a jury’s verdict is authorized if the evidence adduced at trial was sufficient to support a conviction of the charged offense.
 

 La. R.S. 14:95(E) provides:
 

 If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during tive sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence. Upon a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than twenty years nor more than thirty years without the benefit of probation, parole, or suspension of sentence.
 

 Berry asserts that the foregoing language precludes the possibility that an attempted possession of a drug can meet the statute’s requirements for conviction. He reasons that since the Louisiana Legislature specifically included an attempted crime of violence as one of the statute’s possible predicate elements, it must have, by inference, meant to exclude attempted narcotics possession as a predicate element.
 

 | {Although Berry argument is interesting, it is irrelevant to the disposition of his appeal.
 
 [5]
 
 Specifically, the jury’s conclusion that Berry was guilty of attempted possession of heroin is of no moment given that this conviction was ultimately vacated by the trial court on the defendant’s motion. In other words, Berry is no doubt satisfied with the vacation of his conviction for attempted possession of heroin, but nevertheless also wants to use the jury’s now-vacated fact finding
 
 offensively
 
 to reverse his remaining conviction. It stands to reason that the jury’s finding that Berry attempted to possess heroin for the purposes of La. R.S. 40:966 C(1) was rendered
 
 *824
 
 non-existent after the trial court granted Berry’s motion in arrest of judgment and vacated his conviction with respect to that charge.
 

 We find that Berry’s conviction with respect to La. R.S. 14:95 E should be upheld provided the evidence adduced at trial was sufficient to support a conviction for the offense charged. The constitutional standard for testing the sufficiency of the evidence, enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 See also State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986). However, a reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.
 
 State v. Mussall,
 
 523 So.2d 1305, 1311 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do.
 
 State v. Shaw,
 
 07-1427, p. 15 (La.App. 4 Cir. 6/18/08), 987 So.2d 398, 408. If rational triers of fact could disagree as to the interpretation of the evidence, the rational triers’ view of all the evidence most favorable to the prosecution must be adopted.
 
 Id.
 
 The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.”
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.1992).
 

 In the case at bar, Officer Wiltz testified that when he entered the bedroom of the apartment he observed Berry holding a bag and that Berry tossed the bag onto the bed with his left hand. Subsequent tests showed that the bag contained heroin, and Berry stipulated to this finding. Officer Wiltz further testified that after Berry tossed the bag onto the bed, he observed the defendant remove a handgun from a holster strapped to his right side and toss it onto the bed. Additionally, Officer Wiltz testified that he also observed a digital scale, anacitol, and foils on the bed. Clearly, Officer Wiltz’s testimony alone was sufficient to sustain Berry’s conviction for violating La. R.S. 14:95 E. Likewise, the record supports the conclusion that a rational juror could find that the defendant was, at one point, in possession of both narcotics and firearms.
 

 CONCLUSION
 

 We find the evidence in the record support’s the defendant’s conviction for violating La. R.S. 14:95 E. Therefore, we affirm the defendant’s conviction and ^sentence.
 

 AFFIRMED.
 

 [1]
 

 . Burnis Magee was also charged by the same bill of information with violating La. R.S. 40:966 C(l), possession of heroin. The record indicates that Mr. Magee pled guilty to the charge and was sentenced to four years, hard labor, in the Department of Corrections. The trial court suspended the sentence and placed Mr. Magee on three years of active probation.
 

 [2]
 

 . The man was later identified
 
 by
 
 Office Wiltz as Lagusta Williams.
 

 [3]
 

 . No one else was in the bedroom with the Berry. However, on cross-examination, Officer Wiltz noted that he recalled at least one other person — a woman — in the house at the time of the raid.
 

 [4]
 

 . Officer Wiltz had testified during the state's case-in-chief that the defendant threw the plastic bag, which later was found to contain heroin, using his left hand.
 

 [5]
 

 . We note that the original verdict could have been a compromise verdict. Compromise verdicts are permissible, whether or not the evidence supports the compromise verdict, as long as the verdict comports with the legislative scheme of La.C.Cr.P. art. 814 and the evidence is sufficient to sustain a conviction on the charged offense.
 
 State v. Malvoisin,
 
 00-0485 (La.App. 4 Cir. 1/24/01), 779 So.2d 73.